United States District Court
Middle District of Florida
Jacksonville Division

EDITH NGWABA,

    *Plaintiff,*

v.                              No. 3:17-CV-936-J-34PDB

KATHERINE L. BARANOWSKI ET AL.,

    *Defendants.*

_____

## Report & Recommendation

Proceeding without a lawyer and in forma pauperis, Edith Ngwaba is trying to obtain permanent residency, a social security card, and a driver's license for her son, Ositadimma Obiaku, who has been an adult since the inception of the case. She is also trying to obtain reimbursement for money she has spent on her unsuccessful endeavors. The Court has given her four chances to file a legally sufficient pleading. She has not done so. The undersigned recommends dismissal.

## I.    Background

### A.    *Original Complaint*

Ms. Ngwaba filed the original complaint on June 22, 2017, in the Northern District of Florida against Katherine Baranowski with the United States Department of Homeland Security ("DHS"), the Social Security Administration ("SSA"), and the Florida Department of Transportation ("FDOT"). Doc. 1. She alleged Ms. Baranowski had wrongfully cancelled Mr. Obiaku's residency status and the cancellation is in the SSA's and FDOT's records. Doc. 1 at 7, 9–10. The complaint's caption read, "Edith M. Ngwaba for Ositadimma Obiaku E.," Doc. 1 at 1, and she listed Mr. Obiaku as a co-plaintiff, Doc. 1 at 2, but only she signed the complaint, Doc. 1 at 8.

A magistrate judge in the Northern District of Florida permitted Ms. Ngwaba to proceed in forma pauperis. Doc. 4. The judge gleaned from the complaint that she was trying to obtain a permanent resident card (a green card) for Mr. Obiaku and $20,000 in expenses she had incurred in trying to obtain residency status for him. Doc. 4 at 4. The judge stated the court had no jurisdiction to review any denial of an application to adjust status (I-485; "Application to Register Permanent Residence or Adjust Status")[1] or to order the United States Citizenship and Immigration Services ("USCIS") to grant residency or pay expenses. Doc. 4 at 4–6. He explained Ms. Ngwaba alleged no constitutional violation and so had no claim against Ms. Baranowski under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Doc. 4 at 6. And he explained Ms. Ngwaba failed to state a claim against the SSA and FDOT because they are without control over Mr. Obiaku's residency status. Doc. 4 at 6–7.

Construing the complaint liberally, the magistrate judge determined that Ms. Ngwaba may have been trying to seek review of the denial of her application to establish a relationship with an alien relative (I-130; "Petition for Alien Relative").[2] Doc. 4 at 7. The judge observed that, under the Administrative Procedures Act ("APA"), the court has jurisdiction to review agency denials based on nondiscretionary decisions and allowed Ms. Ngwaba to amend the complaint for the "limited purpose" of pursuing that claim. Doc. 4 at 7. The judge advised Ms. Ngwaba that she needed to allege details about the denial of any I-130 petition and any administrative appeal of any denial. Doc. 4 at 8. The judge also warned Ms. Ngwaba about the six-year statute of limitations for bringing that claim. Doc. 4 at 8 (citing 28 U.S.C. § 2401).

---

[1]The I-485 application is used by an alien in the United States to apply for lawful permanent residence. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2.

[2]The I-130 petition is used by a citizen or lawful permanent resident of the United States to establish a relationship to an alien relative who wishes to obtain an immigration benefit. 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.2.

**B.      *First Amended Complaint & Transfer***

Ms. Ngwaba filed a first amended complaint, this time against Ms. Baranowski with the DHS, Howard Bowies with the SSA, and Victoria Kliner with the FDOT. Doc. 5. Because Ms. Baranowski is in Jacksonville, the magistrate judge in the Northern District of Florida transferred the case here. Doc. 6. The judge acknowledged that the new defendants—Mr. Bowies and Ms. Kliner—are in the Northern District of Florida but declined to consider them in deciding whether transfer was warranted because he had informed Ms. Ngwaba that she has no claim against the SSA or FDOT. Doc. 6 at 2 n.1.

In the first amended complaint, Ms. Ngwaba again complained about Ms. Baranowski's alleged actions concerning Mr. Obiaku. Doc. 5 at 4–6. Despite the magistrate judge's direction, she provided no details about any I-130 petition or administrative appeal. *See generally* Doc. 5. Instead, she contended Ms. Baranowski had violated various constitutional amendments, Mr. Bowies had wrongfully denied Mr. Obiaku a social security card, and Ms. Kliner had wrongfully denied Mr. Obiaku a driver's license. Doc. 5 at 6–8. She demanded approval of Mr. Obiaku's residency status, $20,000 in expenses she had incurred in trying to obtain residency status for him, and a refund of money she had paid for him to obtain a driver's license. Doc. 5 at 8, 11–12. The caption of the first amended complaint names Ms. Ngwaba, Mr. Obiaku, and Elives Obiaku (Ms. Ngwaba's other son), and the first amended complaint lists all three as plaintiffs, but only Ms. Ngwaba signed the pleading. Doc. 5 at 1, 2, 13–14.

Reviewing the first amended complaint under 28 U.S.C. § 1915(e)(2)(B) and discerning no plausible claim but giving Ms. Ngwaba the benefit of the doubt, the undersigned directed her to file a second amended complaint as a final opportunity to present a sufficient pleading. Doc. 11. The undersigned explained the pleading standards and why the first amended complaint did not satisfy them. Doc. 11 at 1–2. The undersigned identified areas of uncertainty, including whether Ms. Ngwaba

intended to proceed as the sole plaintiff and the specific action each defendant had taken that amounted to a plausible constitutional violation. Doc. 11 at 2. The undersigned emphasized the limitations of the Court's jurisdiction and ability to grant certain relief. Doc. 11 at 2. The undersigned repeated that Ms. Ngwaba could not state constitutional claims against Mr. Bowie and Ms. Kliner if their actions resulted from Mr. Obiaku's lack of residency status because the SSA and FDOT have no control over that status. Doc. 11 at 2. The undersigned referred Ms. Ngwaba to the free Legal Information Program. Doc. 11 at 3.

## C.   *Second Amended Complaint*

Using AO Form Pro Se 15 ("Complaint for Violation of Civil Rights (Non-Prisoner)"), Ms. Ngwaba filed a second amended complaint against Ms. Baranowski, Mr. Bowies, and Ms. Kliner, checking boxes indicating that she is suing them only in their individual capacities. Doc. 12. She lists Mr. Obiaku as a co-plaintiff, Doc. 12 at 2, and includes his name as a typed italicized "signature" at the bottom of an attached statement, Doc. 12 at 19, but she includes in the caption only "Edith Ngwaba," Doc. 12 at 1, and only she signed the pleading, Doc. 12 at 6. The second amended complaint is the operative pleading. It contains the following alleged facts.

### 1.   *Allegations against Ms. Baranowski with the DHS*

In 1997, Mr. Obiaku was born in Libreville, Gabon, at Annexe de la Sorbonne, as evidenced in a birth declaration (exhibit 1 to the second amended complaint). Doc. 12 at 11; Doc. 12-1. The declaration was submitted to the Gabonese Health Department, and, in 1998, the department issued a birth certificate that included on the first line the birth date and the issue date (exhibit 2 to the second amended complaint). Doc. 12 at 11; Doc. 12-2. The birth date was and has always been clear and open and is in Ms. Ngwaba's passport under "children" (exhibit 3 to the second amended complaint). Doc. 12 at 11; Doc. 12-3.

In 2000, Ms. Ngwaba and Mr. Obiaku petitioned for lawful permanent residency. Doc. 12 at 11. In 2001, Mr. Obiaku received a work authorization from the Internal Revenue Service (exhibit 4 to the second amended complaint) and, later that year, a social security number. Doc. 12 at 11; Doc. 12-4. The work authorization and immunization records (exhibit 4 to the second amended complaint) include his birth date and social security number. Doc. 12 at 11; Doc. 12-4.

In 2002, the DHS interviewed Ms. Ngwaba for lawful permanent residency. Doc. 12 at 12. Although she had petitioned for residency for Mr. Obiaku and had paid fees, he was "ignored" because he was a minor. Doc. 12 at 12.

Years later, in July 2011, Ms. Ngwaba filed an I-130 petition and an I-485 application so Mr. Obiaku and his brother, Elives, could obtain lawful permanent residency. Doc. 12 at 12. To complete the petitions and applications, they had to travel several times to Gainesville, Florida, to be examined by authorized physicians for clinical procedures required by the DHS, and she had to use and pay approved translators to prepare birth documents. Doc. 12 at 12.

In November 2011, the DHS asked for documents to show lawful admission into the United States. Doc. 12 at 12. In December 2011, Ms. Ngwaba submitted them, including new birth documents. Doc. 12 at 12. The documents for Elives were correct and accepted by "a male couscous diligent immigration representative," and, in May 2012, Elives obtained lawful permanent resident status (exhibit 5 to the second amended complaint). Doc. 12 at 12; Doc. 12-5.

Although the documents for Mr. Obiaku were equivalent to the documents for Elives, the representative examining the documents for Mr. Obiaku—Ms. Baranowski—said she had not received the documents and repeatedly asked for and received them. Doc. 12 at 12. Ms. Ngwaba had to spend more money to obtain the same documents. Doc. 12 at 12. In April 2013, Ms. Baranowski denied an appeal

concerning Mr. Obiaku, contending the birth certificate named no parents and contained inconsistencies. Doc. 12 at 12–13.

After unsuccessful appeals, Ms. Ngwaba suggested to Ms. Baranowski that Ms. Baranowski might be confused because Mr. Obiaku's birth documents should already be in the system from his first application and presented Ms. Baranowski his 2001 work authorization showing his birth date. Doc. 12 at 13. Ms. Baranowski "got so mad" and ordered Ms. Ngwaba to "hand over" the work authorization. Doc. 12 at 13. Ms. Ngwaba "exclaimed" in the office and "went home depressed." Doc. 12 at 13. Although Mr. Obiaku has lived in the United States for fifteen years, Ms. Baranowski has "removed" all of his "statuses." Doc. 12 at 13.

During an administrative appeal, Ms. Ngwaba asked Ms. Baranowski to review the documents that Ms. Baranowski's colleague had reviewed in approving lawful permanent residency for Elives. Doc. 12 at 13. As a result, Ms. Baranowski threatened to cancel Elives's lawful permanent residency. Doc. 12 at 13.

In April 2013, Ms. Baranowski issued a decision that reflected "bewilderment"; she requested more documents for the I-130 petitions and I-485 applications for both Elives and Mr. Obiaku despite that Elives already had received lawful permanent resident status. Doc. 12 at 13. Ms. Ngwaba again appealed, and Ms. Baranowski again denied the appeal, which prompted Ms. Ngwaba to file this case. Doc. 12 at 14.

2.    *Allegations Against Ms. Kliner with the FDOT*

In 2015, Ms. Ngwaba and Mr. Obiaku went to a driver's license office to get a license for him. Doc. 12 at 14. Students like Mr. Obiaku were getting them and driving to games. Doc. 12 at 14. Ms. Kliner refused his request. Doc. 12 at 14. Leaving the office, Mr. Obiaku cried, explaining that all of his friends have identification cards or driver's licenses—even those new to Florida—and wondering how he can exist without one. Doc. 12 at 14. To no avail, Ms. Ngwaba wrote a letter to Ms. Kliner and

provided copies of Mr. Obiaku's "immigration status," vaccination records, and school records showing years of Florida residency. Doc. 12 at 15.

In 2016, Ms. Ngwaba and Mr. Obiaku returned to a driver's license office to complete an application for a driver's license, again provided "evidence" of his residency, and paid a required fee. Doc. 12 at 15. A "lady representative" told Ms. Ngwaba the driver's license would issue in three months, but a year has passed without its issuance, and Ms. Kliner continues to hold the payment. Doc. 12 at 15.

When Mr. Obiaku turned eighteen, his behavior changed, and he developed a "strange attitude" due to annoyance with the government and with Ms. Ngwaba because she had failed to act on her promise to fix things. Doc. 12 at 15. The lack of a driver's license has changed his "positive life" and her relationship with him, "as he thinks [she is] unable to mother." Doc. 12 at 15. He has not had a father since age two, and now he cannot drive, work, or go to college like others. Doc. 12 at 15.

3.    *Allegations Against Mr. Bowie with the SSA*

In September 2015, a bag with Mr. Obiaku's social security card was stolen. Doc. 12 at 14. A police report documents the theft. Doc. 12 at 14. That month, Mr. Bowies with the SSA refused to replace the card despite Ms. Ngwaba's presentation of the police report and Mr. Obiaku's social security number, explaining to her the SSA could not verify his immigration status. Doc. 12 at 14. According to Ms. Ngwaba, "This was an eye opening to the damage caused by Ms. Baranowski as she denied, cancelled and retrieved [Mr. Obiaku's] immigration status." Doc. 12 at 14.

4.    *Claims and Demands*

As the basis for jurisdiction, Ms. Ngwaba checks a box next to 42 U.S.C. § 1983. Doc. 12 at 3.

Ms. Ngwaba purports to bring four claims against Ms. Baranowski: one under 42 U.S.C. § 1981 for "Discriminative Negligence" in breaching a duty of care owed to her by refusing to grant Mr. Obiaku lawful permanent residency; one under § 1981 for "Equal Right" in refusing to grant Mr. Obiaku lawful permanent residency despite Ms. Ngwaba's submissions of required documents and payments of required fees; one under 18 U.S.C. § 241 and 42 U.S.C. § 1985 for failing to "protect and care for a youth[] born by a citizen"; and one under the "Civil Rights Acts" for ordering her to hand over Mr. Obiaku's work authorization card and causing her "extreme emotional torture" based on "race, color, gender, and nationality." Doc. 12 at 15–16.

Ms. Ngwaba purports to bring one claim against the "Social Security Administration Tallahassee" under Florida Statutes Chapter 760 (the Florida Civil Rights Act of 1992) for neglecting her after seeing Mr. Obiaku's social security card on a form (although she names as a defendant Mr. Bowies in his individual capacity). Doc. 12 at 16.

Ms. Ngwaba purports to bring one claim against the "Florida Department of Transportation" under the Florida Civil Rights Act of 1992 and "Statutes and Constitution" for mentally hurting Mr. Obiaku by denying him a driver's license (although she names as a defendant Ms. Kliner in her individual capacity). Doc. 12 at 16.

Ms. Ngwaba states that Mr. Obiaku brings three claims: one against the DHS under 42 U.S.C. § 1983 and common law negligence for depriving him of rights; one against the SSA under the Florida Civil Rights Act, the "Equal Civil Right Acts of 1994," and common law negligence for changing "his perception of life"; and one against the FDOT under Florida Statutes Chapter 760 for denying him a driver's license based on his minority status. Doc. 12 at 17.

Ms. Ngwaba claims that Ms. Baranowski damaged her reputation. Doc. 12 at 17. Ms. Ngwaba claims that Ms. Baranowski "violently" took Mr. Obiaku's work

authorization card from her. Doc. 12 at 17. Ms. Ngwaba claims that Mr. Obiaku has suffered physical, mental, and emotional damages, and that his "educational growth" has been affected. Doc. 12 at 17. Ms. Ngwaba claims that the actions of the defendants caused her "immense" financial and psychological harm and hurt her "family growth." Doc. 12 at 17. Ms. Ngwaba alleges that she has had to spend more than $22,000, which has harmed her credit, and that she now owes money to her "auntie" (a professor at Florida A&M University), the Florida A&M University Credit Union, and others. Doc. 12 at 19.

Ms. Ngwaba asks the Court to take the following actions: order Ms. Baranowski to provide Mr. Obiaku lawful permanent residency; order the FDOT to mail his driver's license to him; order Ms. Baranowski to pay her $20,000 for her financial injury; award Ms. Ngwaba "General Money damages" for pain and emotional distress; award Mr. Obiaku "special money damages" due to his inability to work or obtain financial aid for college and to cover his medical bills; update Mr. Obiaku's status and "prevent undesirable neglects" of others by Ms. Baranowski; and order Ms. Baranowski to pay punitive damages. Doc. 12 at 17–18.

### D.    Hearing

To discern if Ms. Ngwaba could state any plausible federal claim if given another opportunity to amend, the undersigned conducted a hearing at which Ms. Ngwaba appeared, bringing five documents with her on which she had written notes.

One document is a copy of a permanent resident card (presumably for Elives; identifiers are redacted) indicating lawful permanent residency since May 29, 2012. Doc. 21-1 at 7.

One document is a July 24, 2012, "Notice of Decision" signed by Ms. Baranowski denying an I-485 application (presumably by Mr. Obiaku; the name is redacted) because the "evidence … submitted with [the] application on July 29, 2011 was not sufficient to establish … eligibility for the benefit sought." Doc. 21-1 at 5. The

9

document lists the records requested and the records received. Doc. 21-1 at 5. The document explains that a brief to support an appeal must be received within 30 days of filing the appeal. Doc. 21-1 at 6. On the document, Ms. Ngwaba appears to have written, "Evidence of repeatedly requesting and rejecting the only date of birth [Mr. Obiaku] has and already established and also matched all his document." Doc. 21-1 at 5.

One document is a July 25, 2012, letter from the USCIS to Ms. Ngwaba explaining the USCIS could not complete the processing of her I-130 petition without Mr. Obiaku's original foreign language birth certificate and directing her to provide that certificate within eighty-seven days. Doc. 21-1 at 4. On the document, Ms. Ngwaba appears to have written, "Ms. Baranowski continued requesting now original of both English and French original birth certificate for [Mr. Obiaku] yet it was denied again and again." Doc. 21-1 at 4.

One document is an April 22, 2013, decision by the USCIS denying Ms. Ngwaba's I-130 petition for lack of prosecution, explaining she had failed to provide requested documents. Doc. 21-1 at 2–3. The requested documents included original birth certificates (presumably for Mr. Obiaku and Elives; identifiers are redacted); Ms. Ngwaba instead had provided a certified copy of a birth declaration without a requested English translation for a "male child" with no child's or father's name. Doc. 21-1 at 2–3. The requested documents also included an I-864 "Affidavit of Support" under Section 213A of the Immigration and Nationality Act ("INA");[3] Ms. Ngwaba instead had provided an affidavit that did not meet minimum income requirements and included no joint sponsor. Doc. 21-1 at 2–3. The document explains the decision would become final unless she appealed to the Board of Immigration Appeals ("BIA")

---

[3]An I-864 affidavit of support is required for most family-based immigrants to show they have sufficient financial support and are unlikely to become public charges; an affidavit serves as an agreement between a sponsor and the United States in which the sponsor promises to support the immigrant if he cannot on his own. 8 U.S.C. § 1183a; 8 C.F.R. § 213a.2.

within 30 days. Doc. 21-1 at 3. On the document, Ms. Ngwaba appears to have written, "Evidence [Mr. Obiaku's] status of second I-130 and I-485. I was confused as she included [Elives] who has his residency in 05/29/12. [Elives] has been resident since 05/29/2012." Doc. 21-1 at 2.

One document is a September 14, 2015, letter from the Tallahassee office of the SSA to Ms. Ngwaba explaining the SSA could not issue a social security card to her on Mr. Obiaku's behalf because "The Department of Homeland Security is unable to verify the immigrant document you submitted as evidence of your lawful alien status." Doc. 21-1 at 1. On the document, Ms. Ngwaba appears to have written, "Howard E. Bowies District Manager" and other contact information. Doc. 21-1 at 1.

At the hearing, the undersigned tried to address deficiencies in the second amended complaint, tried to explain jurisdictional limits, and attempted to understand Ms. Ngwaba's positions. But it was difficult to have a clear dialogue with her because she was highly emotional; she cried, she screamed, and she eventually left the courtroom without planning to return, causing several court security officers to enter the courtroom (at the presumed request of the court security officer who was present) and one to calm her down outside the courtroom. Once she had calmed down and reentered the courtroom, the undersigned provided her with contact information for a free immigration law clinic.

Although the undersigned had earlier warned Ms. Ngwaba that the second amended complaint would be her final opportunity to present a sufficient pleading, giving her every benefit of the doubt and believing that the clinic—if she used it—could provide her with needed guidance, the undersigned, in an order dated May 18, 2018, gave her four months to consider and file a third amended complaint. Doc. 22. The undersigned warned her that, if she failed to file a third amended complaint by September 17, 2018, the undersigned would recommend dismissal under 28 U.S.C. § 1915(e)(2)(B). Doc. 22 at 1. Pending the third amended complaint or a decision to not file one, the case was administratively closed.

11

### E.   Letter

On September 11, 2018, the clerk received a letter from Ms. Ngwaba to the Honorable Marcia Morales Howard. Doc. 23. Ms. Ngwaba thanks the undersigned for conducting the hearing, which she perceived as an opportunity to "provide evidence" that Mr. Obiaku's status was "wiped out by a trusted immigration director Ms. Baranowski." Doc. 23 at 1. She asks the Court to treat her case with "dignity," expresses that it was "heartbreaking" to be repeatedly asked to amend the pleading, and opines that her failure to be represented by a lawyer "will affect the civil right of a citizen in a situation that affected a youth life without any reason." Doc. 23 at 1. She explains that she visited the immigration law clinic and is getting help from Ericka Curran there "to start another immigration establishment," but that Ms. Curran is "not in a position" to represent her in this case. Doc. 23 at 1–2. She contends it is the Court's "duty" to award her and Mr. Obiaku "financial maintenance" to pay for a new I-130 petition that Ms. Curran has filed. Doc. 23 at 2. She asks Judge Howard (specifically) to award Mr. Obiaku $20,000 to pay expenses and for a lawyer to whom Ms. Curran will refer him once the I-130 petition is decided. Doc. 23 at 2. She states that Mr. Obiaku turned 21 years in October 2018, and

> without education or job; my son's life can only be changed and improve by a financial assistance to pay the attorney to represent him as recommended by the Legal clinic. Your honor, remember how many years we have spent on this painful un-necessary damage caused by Ms. Baranowski, the effect to a youths life, my passed expenses and the future expenses. This Country stands for justices and freedom but most times it is not for everyone, thanks for your consideration to help us accomplish the reinstatement of [Mr. Obiaku's] immigration status.

Doc. 23 at 2 (typos in original).

She filed neither a third amended complaint as directed in the May 18, 2018, order nor a motion for more time to file one.

### F.    Order to Show Cause and Response

On October 24, 2018, the undersigned entered an order directing Ms. Ngwaba to show cause by November 16, 2018, why her case should not be dismissed for failure to prosecute or follow the May 18, 2018, order directing her to file a third amended complaint. Doc. 24. The undersigned warned her that her failure to respond to the order to show cause would result in a recommendation to dismiss the case without prejudice. Doc. 24 at 1.

On November 13, 2018, Ms. Ngwaba responded to the order to show cause. Doc. 25. She expresses appreciation for the undersigned's kindness and a "positive change" that has occurred due to the referral to the free immigration law clinic, through which Ms. Curran has filed a new I-130 petition on behalf of Mr. Obiaku. Doc. 25 at 1. She explains that since the day she left the May 2018 hearing, she has been "very sick" and diagnosed with "difficult breathing due to high nerve-[]racking accumulation without basic health support," due to the "many years" of trauma over her son's immigration status. Doc. 25 at 1. She asks the Court to "penalize" and "prosecute" Ms. Baranowski for cancelling Mr. Obiaku's immigration status. Doc. 25 at 1–2. She repeats facts from her previous pleadings and "urges" the Court to "overlook the deficiency on attorney representation in this vulnerable case and review the evidence of claims and support the legal clinic steps and recommendations." Doc. 25 at 2.

Ms. Ngwaba indicates that Mr. Obiaku is now in Nigeria. Doc. 25 at 3. She asks the Court to "accommodate and award emergency financial support"; issue a "Federal order to rescue[]" Mr. Obiaku; order Ms. Baranowski "to replace [Mr. Obiaku's] status"; provide a "portion of the financial claim of $20,000.00 to pay for [a] Delta flight to Nigeria as a change of environment recommendation from his counselor"; provide financial support for Mr. Obiaku's "basic necessity in Nigeria"; direct the "immigration office" to provide a letter for a visa to allow Mr. Obiaku to return to the United States while he awaits the processing of his re-filed I-130

petition; appoint a lawyer to represent Mr. Obiaku; and order payment for each immigration document. Doc. 25 at 3. She concludes:

> Your honor do you see why I am traumatized , I will not have life without your immediate intervention and this has been the amended complaint and reason of this case: for the Federal Court to question why such forbidding harm to a youth ?the cancellation of his immigration status and enforce order to Ms. Baranoswski to bear the consequences of the harm she caused to us and be advised so that no other family will go through this. Your honor imagine the horrific situations that my life has been into all these years, even as I am shaking writing to you now, the abandonment of the justice, why will such a thing happen to anybody and how possible both financially, years wasted and immigration procedures, can one repair this condition for a youth to function without a court enforcement in addition to the current immigration issues in United States. Remember that the Federal Court is the only solution to this case as recommended by an experience immigration officer years ago as the only way to resolve the damage, imagine how lifeless this harm has sucked everything in me watching my son stranded situation.

Doc. 25 at 3 (typos in original).

## G.   *Request for Specific Performance*

On February 1, 2019, Ms. Ngwaba filed a "Request for Court Specific Performance," which is the latest document on the docket. Doc. 26. Addressed to the undersigned, she continues to demand court intervention to remedy "the ill ml-discrimination damage by Ms. Katherine L. Baranowski, et al which might end in losing [her] own son as it cause[s] a consistent pain in [her] life." Doc. 26 at 1. She explains the law firm of Shorstein, Lasnetski & Gihon "disappointed" her the day prior by refusing to take her case after she paid a $250 consultation fee and provided the immigration documents. Doc. 26 at 1. She explains the immigration law clinic will only help her file another I-130 petition, which she contends will not help Mr. Obiaku. Doc. 26 at 1–2. She explains Mr. Obiaku lives with distant relatives in Nigeria and details violence there ("consistent killing videos …, as they hunt[] for the youths and cut their heads"). Doc. 26 at 2. She states "five lawyers" have refused to represent her. Doc. 26 at 3. She asks the Court to order Ms. Baranowski to

"reinstate[]" Mr. Obiaku's "immigration status" and "[r]elease financial support to pay a lawyer to facilitate the process [and] pay for [Mr. Obiaku's] expenses and rehabilitation." Doc. 26 at 2. She concludes,

> Please your honor save my life and my son's life, no one deserves to be tortured like this. Thank you for considering the nun-explainable situation of a teenager life that had a valued 1-94 visa records in 2001 with the same date of birth why will Ms Baranoswski even denied him of his residency and also requested for Elives Obiaku Ostia's brother date of birth certificate in 2013 after another immigration representative has approved and issued Elives Obiaku a resident in 2012 as I submitted each copy evidence to the court. Our Life depends on the court decision as the Coastal support told me that without a lawyer that I will not receive any claims and they will not represent me and today five lawyers refused. They also have the attached letter for me to sign that they will not represent my son visa weaver which concludes that they just wasted another money instead of telling the court the only solution as the immigration personnel earlier explained and recommended that it is only court order that can change my sons damage of no status in the system once it is reinstated.

Doc. 26 at 3 (typos in original).

Ms. Ngwaba includes a letter and retainer agreement from a law student at the immigration law clinic explaining that Ms. Curran can no longer represent her if she does not complete and sign the agreement; Ms. Curran and the clinic cannot represent her "in any legal matters other than the pending G-639 ("Freedom of Information/Privacy Act Request") and I-130 documents that have already been filed on your behalf"; and the law school, the clinic, and Ms. Curran will not proceed on her behalf in this case "or any other lawsuits that may arise." Doc. 26-1.

## II.    Standards

### A.    *Jurisdiction*

Federal courts have an independent obligation to determine if subject-matter jurisdiction exists. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). When a court lacks jurisdiction over a claim, it lacks power to render judgment on the merits of the

claim and must dismiss the claim without prejudice. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

A district court has supplemental jurisdiction over a state claim if the claim is so related to a claim within the original jurisdiction of the court that the claims form part of the same case or controversy. 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002). Because state courts are the "final expositors of state law," *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992), dismissal of all federal claims often justifies dismissing all state claims too, *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). The dismissal should be without prejudice. *Id.*

## B.    Pro Se Pleadings

A court must hold a complaint drafted by a pro se plaintiff to a less stringent standard than one drafted by a lawyer. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). If a pro se plaintiff names the wrong entity as a defendant, the court may allow amendment to name the correct entity. *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 n.3 (5th Cir. 1981). If a more carefully drafted complaint might state a claim, a pro se plaintiff must be given at least one chance to amend the complaint before the court may dismiss it with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). But a court may not rewrite a deficient complaint for a pro se plaintiff or otherwise serve as her de facto counsel. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## C.    In-Forma-Pauperis Proceedings

A court "shall" dismiss an action by a plaintiff proceeding in forma pauperis "at any time" if the court determines the action is frivolous, malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief against a defendant immune from that relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if "the plaintiff's realistic chances of ultimate success are slight," including if an affirmative defense will defeat the action. *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 (11th Cir. 1990) (internal quotation marks omitted). An action fails to state a claim on which relief may be granted if, applying the Federal Rule of Civil Procedure 12(b)(6) standards, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), the pleading fails to allege facts, accepted as true, that state a claim "that is plausible on its face," *Ashcroft*, 556 U.S. at 678.

## III.   Analysis

At the outset, to the extent Ms. Ngwaba attempts to bring any claim on behalf of either son or represent either son in this case, she may not.

"An action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1), because a person lacks standing to bring a claim based on another's interest, *Township of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011). Furthermore, although parties "may plead and conduct their own cases personally," 28 U.S.C. § 1654, the right to do so "is limited to parties conducting their own cases, and does not extend to non-attorney parties representing the interests of others." *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 11(a) ("Every pleading … must be signed … by a party personally if the party is unrepresented."); *Murphy v. Int'l Bus. Machines Corp.*, 810 F. Supp. 93, 95 n.2 (S.D.N.Y. 1992) ("While a party may appear *pro se*, there is no basis in law for such a party to appear by another *pro se* litigant, acting in effect as a lawyer for co-plaintiffs, without the benefit of a license, or proper training."). This limitation extends to the parent-child context; a pro se litigant who is not an attorney may not sue on behalf of his or her child. *Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 581 (11th Cir. 1997), *overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007).

17

Only Ms. Ngwaba signed the pleadings and otherwise appeared in the case. Doc. 1 at 8; Doc. 5 at 1, 2, 13; Doc. 12 at 6. Her sons therefore are not parties, and she is trying either to bring their claims for herself or to represent them on their claims. She has no standing to bring their claims for herself, *see Lyndhurst*, 657 F.3d at 154, and she may not represent them on their claims, *see Murphy*, 810 F. Supp. at 95 n.2. Dismissal without prejudice of any claims of the sons is warranted.

Ms. Ngwaba mostly complains about Ms. Baranowski's alleged failure to accept birth and other documents Ms. Ngwaba presented to support the I-485 application for Mr. Obiaku. Even if Ms. Ngwaba possessed standing to assert a claim on behalf of herself or Mr. Obiaku relating to the I-485 application, the undersigned can discern no plausible claim against Ms. Baranowski from the latest pleading (or any of the pleadings), even considering all other filings.

To the extent Ms. Ngwaba seeks to raise a *Bivens* claim against Ms. Baranowski for alleged constitutional violations committed individually by her, such a claim is unavailable.[4]

In *Bivens*, the Supreme Court recognized an implied cause of action to redress a search and seizure by federal officers in violation of the Fourth Amendment. 403 U.S. at 397. Since then, the Supreme Court has recognized only two other contexts in which a *Bivens* cause of action is available: to redress unlawful discrimination by a congressman in violation of the Fifth Amendment Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and to redress cruel and unusual punishment by federal prison officials in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).[5] Since the latter case, the Supreme Court has "consistently refused to

---

[4]To the extent Ms. Ngwaba purports to bring claims against Ms. Baranowski and the DHS under 42 U.S.C. §§ 1983 and 1985, *see* Doc. 12 at 15–17, by their language, those types of claims are available only against state actors.

[5]To state a claim for relief under *Bivens*, a plaintiff must plead that a government official—through that official's individual actions—violated the United States Constitution. *Stevens v. Osuna*, 877 F.3d 1293, 1309 (11th Cir. 2017). Qualified

extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

Whether to extend *Bivens* requires consideration of whether any alternative, existing process for protecting the constitutionally recognized interest is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" and whether, even without an alternative, there are "special factors counselling hesitation before authorizing a new kind of federal litigation." *Minneci v. Pollard*, 565 U.S. 118, 122–23 (2012) (quoted authorities omitted). On the first consideration, the alternatives need not provide complete relief such as monetary damages. *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).

In *Alvarez v. U.S. Immigration & Customs Enforcement,* the Eleventh Circuit declined to extend *Bivens* to imply a cause of action to redress a claim against federal officials for unlawful detention in the custody of Immigration and Customs Enforcement ("ICE") in violation of the Fourth and Fifth Amendments. 818 F.3d 1194, 1205–12 (11th Cir. 2016). The court concluded the INA provides an adequate alternative remedy, observing, "federal governance of immigration and alien status is extensive and complex," *id.* at 1207 (quoted authority omitted), and the INA includes "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," *id.* at 1208 (quoted authority omitted). The court observed, "Congress has provided for a host of review procedures tailored to the differently situated groups of aliens that may be present in the United States." *Id.* The court emphasized Congress has amended the INA no less than seven times and concluded, "In light of the frequent attention that the legislature has given to the complex scheme governing removal and its review procedures over many years, we are satisfied that Congress has weighed the policy considerations in favor of and

---

immunity is available for a *Bivens* claim. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A *Bivens* claim in Florida is subject to a four-year statute of limitations. *Davies v. Former Acting Dist. Dir.-Orlando USCIS*, 484 F. App'x 385, 387 (11th Cir. 2012).

against providing damages." *Id.* at 1209. The court added that the plaintiff had not alleged he was actively prevented from seeking meaningful review and relief through the Act and in fact had availed himself of some of the review mechanisms. *Id.* at 1209–10.

The Eleventh Circuit further concluded that even if the INA provided no adequate alternative remedy, special factors unique to the immigration context counseled restraint: the "breadth and detail" of the INA; due respect for separation of powers and the placement of power over immigration matters in the political branches; and the unworkability of the cause of action, including the absence of clearly defined standards, leading to widespread litigation and resulting reluctance to vigorously enforce immigration laws. *Id.* at 1210–11. The court explained that Congress's failure to provide monetary relief was not dispositive, observing that the court has "repeatedly said that we will defer to Congress's decision not to award damages for a particular violation, particularly in the face of a carefully crafted remedial scheme." *Id.* at 1211.

Even if Ms. Ngwaba's allegations concerning Ms. Baranowski amounted to a constitutional violation, and even if Ms. Ngwaba could assert a claim on behalf of herself, the unwillingness of the Supreme Court to extend *Bivens*, together with the rationale in *Alvarez*, make obvious a *Bivens* cause of action is unavailable to her.[6] Besides the special factors stated in *Alvarez*, the INA provides sufficient meaningful remedies to protect constitutionally recognized interests, including, as stated in the July 24, 2012, "Notice of Decision" signed by Ms. Baranowski concerning the I-485 application, the opportunity to pursue an administrative appeal, which Ms. Ngwaba

---

[6]Even if a *Bivens* action against Ms. Baranowski were available to Ms. Ngwaba, the statute of limitations would bar relief based on actions before June 22, 2013 (four years before June 22, 2017, when Ms. Ngwaba filed the original complaint), which appear to be all of them. *See* Doc. 21-1 at 3 ("Notice of Decision" dated July 24, 2012, and signed by Ms. Baranowski denying I-485 application); Doc. 12 at 12 (allegation that Ms. Baranowski denied an appeal in April 2013).

appears to have pursued. *See* Doc. 21-1 at 6 (citing 8 C.F.R. § 1003.3); *see also Elgamal v. Bernacke*, No. CV-13-00867-PHX-DLR, 2016 WL 3753524, at *5–6 (D. Ariz. July 14, 2016) (unpublished) (holding that a *Bivens* cause of action is unavailable to redress a due process violation in the context of a decision on an I-485 application); *Davies v. Former Acting Dist. Dir.-Orlando, USCIS*, 484 F. App'x 385, 388 n.5 (11th Cir. 2012) (observing without analysis, "Even assuming arguendo that the statute of limitations did not bar this case, the [plaintiffs] have not presented any authority to support their claim that a *Bivens* action is permitted for injuries allegedly occurring because of immigration decisions" on an I-130 petition and an I-485 application).

The undersigned has considered whether Ms. Ngwaba could succeed on any claim brought on behalf of herself if she named not Ms. Baranowski but the Attorney General or the Acting Secretary of Homeland Security.

In 8 U.S.C. § 1252(a)(2)(B)(ii), Congress expressly stripped courts of jurisdiction to review certain discretionary immigration decisions of the Attorney General and the Secretary of Homeland Security, including discretionary decisions concerning I-485 applications for adjustment of alien status to lawful permanent resident under 8 U.S.C. § 1255(a). *Ayanbadejo v. Chertoff*, 517 F.3d 273, 276–77 (5th Cir. 2008). A court retains jurisdiction to review non-discretionary decisions, such as the denial of an I-130 petition, *Mejia Rodriguez v. U.S. Dept. of Homeland Sec.*, 562 F.3d 1137, 1144–45 (11th Cir. 2009), or the failure to follow correct procedures, *Kurapati v. USCIS*, 775 F.3d 1255, 1262 (11th Cir. 2014), including those for deciding an I-485 application, *Mantena v. Johnson*, 809 F.3d 721, 730 (2d Cir. 2015).

Although the magistrate judge in the Northern District of Florida identified a possible APA claim seeking review of a denial of an I-130 petition, Doc. 4 at 7, Ms. Ngwaba never amended her pleading to try to state such a claim, having provided no necessary details in the amended or second amended complaint as directed, *see generally* Docs. 5, 12, having focused on alleged constitutional violations, *see generally*

Docs. 5, 12, and having brought to the hearing a copy of the April 22, 2013, decision by the USCIS denying her I-130 petition to show only Ms. Baranowski's alleged confusion in requesting records for Elives despite that he had already obtained permanent resident status, *see* Doc. 21-1 at 2. Indeed, her apparent decision to file a new I-130 petition through the immigration law clinic appears to indicate a decision to ask anew rather than challenge a prior decision. *See Pierre v. U.S. Atty. Gen.*, 300 F. App'x 870, 872 (11th Cir. 2008) ("There is nothing precluding the filing of a new I–130 petition with the Attorney General or the Department of Homeland Security. *See* 8 U.S.C. § 1154."). And in the latest pleading (or any other pleading), she identifies no required procedures the USCIS failed to follow in the processing of any requests. *See generally* Doc. 12. The Court may not serve as her de facto counsel by combing the INA and the related regulation to try to identify any for her. *See GJR Investments*, 132 F.3d at 1369.

Otherwise construing Ms. Ngwaba's latest pleading liberally, and even considering the alleged facts in the documents presented at the hearing, Doc. 21-1, in the recent letter to Judge Howard, Doc. 23, in the response to the order to show cause, Doc. 25, and in the recent request for specific performance, Doc. 26, Ms. Ngwaba states no discernable plausible federal claim on which relief may be granted. Although she purports to state claims for discrimination under various federal statutes, *see* Doc. 12 at 15–19, she alleges no facts that would make plausible that anyone discriminated against her (or Mr. Obiaku) because of race or any other protected category.[7] With no discernable plausible federal claim on which relief may

---

[7]There are other reasons why some of the claims would most certainly fail regardless of whether Ms. Ngwaba could name the correct defendant or bring the claims on behalf of herself or Mr. Obiaku, including reasons relating to sovereign immunity from damages and whether a *Bivens* cause of action would be available against Mr. Bowies. In the interest of judicial economy, this report and recommendation does not address every reason.

be granted, dismissal of any state claim—to the extent Ms. Ngwaba states any—is warranted. *See Baggett*, 117 F.3d at 1353.

Finally, Ms. Ngwaba provides no authority for much of the relief she seeks (e.g. ordering Ms. Baranowski to provide Mr. Obiaku lawful permanent residency or otherwise "replace" his status, prosecuting Ms. Baranowski, updating Mr. Obiaku's residency status, awarding Mr. Obiaku an amount to pay a lawyer to assist him, providing Mr. Obiaku with financial support for his basic necessities while in Nigeria, and directing the "immigration office" to provide a letter for a visa to allow Mr. Obiaku to return to the United States as he awaits processing of the latest I-130 petition. *See* Doc. 23 at 2; Doc. 25 at 1–3; Doc. 26 at 2.

## IV.    Recommendation

Ms. Ngwaba has turned to the Court for solutions to Mr. Obiaku's apparent immigration and concomitant problems. But she should understand there are limits to what the Court may do. She has been referred to the free Legal Information Program, referred to the free immigration law clinic, and given four opportunities to present a legally sufficient pleading but still has not done so. The case cannot move forward on a deficient pleading, and the Court may not serve as de facto counsel. The undersigned recommends:

1.    **dismissing** the case, with any claims belonging to anyone other than Ms. Ngwaba without prejudice, any other claims over which the Court has no jurisdiction without prejudice, and any state claims without prejudice; and

2. **directing** the clerk to terminate the pending request for specific performance, Doc. 26, and close the file.[8]

**Entered** in Jacksonville, Florida, on April 12, 2019.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Marcia Morales Howard

Edith Ngwaba Dobbins
1208 Lake Avenue
Tallahassee, FL 32310

---

[8]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.